EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Francisco Rolón Martínez<br><br>Recurrido<br><br>v.<br><br>Superintendente de la Policía de Puerto Rico Hon. José L. Caldero López<br><br>Peticionario | Certiorari<br><br>2018 TSPR 157<br><br>201 DPR ____ |

Número del Caso: CC-2016-587

Fecha: 27 de agosto de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan

Oficina del Procurador General:

      Lcdo. Luis Román Negrón
      Procurador General

      Lcda. Tanaira Padilla Rodríguez
      Subprocuradora General

      Lcda. Rosa Elena Pérez Agosto
      Procuradora General Auxiliar

Abogado de la parte recurrida:

      Por derecho propio

Materia: Derecho Administrativo: Facultad del Estado para revocar una licencia de armas cuando determina que su poseedor experimenta un historial de violencia, independientemente de que dicho historial se haya identificado previo a la comisión de algún delito.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Francisco Rolón Martínez

   Recurrido

     v.                    CC-2016-0587     Certiorari

Superintendente de la
Policía de Puerto Rico
Hon. José L. Caldero
López

   Peticionario


El Juez Asociado señor ESTRELLA MARTÍNEZ emitió la Opinión del Tribunal


San Juan, Puerto Rico, a 27 de agosto de 2018.

En esta ocasión tenemos la oportunidad de evaluar los contornos del poder del Estado para prevenir y atender situaciones de violencia mediante el proceso de regulación de la posesión de armas de los ciudadanos. Para ello, debemos evaluar el alcance del requisito de no tener un historial de violencia, en el contexto de la potestad del Estado para revocar licencias de armas de su poseedor. Es decir, debemos atender por primera vez si el Estado tiene la facultad de

revocar una licencia cuando determina que su poseedor experimenta un historial de violencia, independientemente de que dicho historial se haya identificado previo a la comisión de algún delito.

Para una cabal comprensión de este asunto, procedemos a exponer el contexto fáctico y procesal en el que se desató la cuestión planteada ante nos.

I

En el año 2013 se presentó una denuncia al amparo de la Ley de Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, en contra del Sr. Francisco Rolón Martínez (señor Rolón o recurrido), quien en ese momento fungía como Agente Investigador de la División de Crimen Organizado y Drogas de la Oficina del Jefe de los Fiscales en el Departamento de Justicia (Departamento).[1] Tal proceso penal no prosperó. Tampoco prosperaron las peticiones de órdenes de protección que fueron solicitadas en su contra por ese mismo suceso. A raíz de lo anterior, la Policía de Puerto Rico (Policía) inició una investigación debido a que el recurrido poseía licencias de armas. Una vez concluida la investigación, el 26 de junio de 2014, el entonces Superintendente de la Policía, Hon. José Caldero López (Superintendente o peticionario), le informó al señor Rolón

---

[1] La denuncia fue presentada por su entonces esposa.

la revocación de su licencia de armas, núm. 17112; su licencia de tiro al blanco, núm. 12629, y la licencia de funcionario público, núm. 92456. Ello por el fundamento de tener un historial de violencia. También le informó que de no estar de acuerdo con esa determinación podía solicitar una vista administrativa. A esos efectos, el recurrido solicitó la misma, la cual se llevó a cabo el 16 de octubre de 2014.

Como corolario de lo anterior, el oficial examinador de la Policía rindió un informe en el cual recomendó confirmar la revocación de las licencias por motivos de seguridad.[2] Concluyó que, tras la investigación de campo realizada, se recomendó desfavorablemente la concesión de las licencias de armas de fuego.[3] Asimismo, destacó que la

---

[2]Del informe del oficial examinador no surge qué prueba se presentó en la vista administrativa. Empero, en el expediente oficial confidencial de la Policía de Puerto Rico (Policía) consta copia del informe de incidente en el caso de violencia doméstica, copia de la Resolución en la cual se archiva el caso y copia de la Resolución en la cual no se expide la orden de protección final.

[3]Del expediente administrativo de la Policía surge que la agente investigadora rindió un informe favorable para la concesión de las licencias de armas. No obstante, la División de Registro de Armas de Fuego decidió finalmente revocar las licencias debido al historial de violencia. Al examinar la investigación de campo realizada, se desprende que, a pesar que varias personas recomendaron favorablemente la concesión de las licencias de armas, no fue unánime. Un compañero de trabajo recomendó desfavorablemente la concesión de las licencias fundamentado en que el Sr. Francisco Rolón Martínez (señor Rolón o recurrido) tiene un carácter un poco acalorado, alegadamente es irritable y pierde el control en ciertas circunstancias. Otro compañero de trabajo entrevistado se abstuvo de hacer recomendación, pero señaló que el señor Rolón no controla sus impulsos de agresividad. Un familiar, a pesar de sugerir favorablemente la autorización para

entonces esposa del recurrido había declarado en varias ocasiones que temía por su vida ante amenazas de muerte hechas por el señor Rolón. Por estas razones, expresó que del expediente surgía que el recurrido pudiese hacer uso de las armas para causar daños de forma ilegal a otras personas.

Así las cosas, el 11 de noviembre de 2014, el Superintendente emitió una Resolución en la que acogió en su totalidad el informe rendido por el oficial examinador y confirmó la revocación de las licencias de armas. Oportunamente, el señor Rolón presentó una reconsideración, en la cual alegó que no procedía la revocación por los siguientes fundamentos: (1) que no se radicaron cargos contra él por la denuncia presentada por su entonces esposa amparada en la Ley de Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, según enmendada; (2) que no se expidieron órdenes de protección en su contra; (3) que la Policía se basó en una especulación sobre el posible uso ilegal de las armas, entre otros. No obstante, el Superintendente no actuó dentro del término de quince días establecido en la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme (LPAU), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA sec. 2165.

---

poseer las armas, señaló que el recurrido se relacionaba con personas de dudosa reputación. Finalmente, su entonces esposa recomendó desfavorablemente la concesión de las licencias.

Inconforme, el recurrido acudió al Tribunal de Apelaciones. Señaló que el foro administrativo incidió al emitir la resolución sin estar fundamentada en la prueba que existía en el expediente y no aplicar el *quantum* de prueba clara, robusta y convincente; erró al concluir que el señor Rolón podía causar daños a otras personas, ello ya que es una mera especulación basada en un futuro incierto, y que la Resolución es nula dado que fue firmada por una persona que se desconocía su título y posición. Expresó, además, que del expediente surgía que tanto la denuncia como las órdenes de protección no prosperaron. Arguyó que lo único que constaba en el expediente es la declaración jurada de la entonces esposa. Consecuentemente, argumentó que no existía evidencia que sustente la revocación de sus licencias de armas.

Por su parte, el peticionario, representado por el Procurador General, sostuvo que existía evidencia sustancial en el expediente que sostenía su determinación, más allá de la falta de méritos de las órdenes de protección. Explicó que, tras la investigación de campo realizada por la agente investigadora, se recomendó desfavorablemente la concesión de las licencias. A esos efectos, mencionó que del expediente administrativo surgía que la gran mayoría de los entrevistados se abstuvieron de realizar comentarios, y que dos indicaron que el recurrido no controlaba sus impulsos de agresividad. Así pues, adujo que el oficial examinador encontró que le faltaba al

recurrido la aptitud necesaria para poseer y portar armas.[4] Además, rechazó el hecho de que aplicara el *quantum* de prueba clara robusta y convincente sugerido por el señor Rolón. Por último, alegó que su resolución era válida debido a que quién la firmó era la directora auxiliar del Negociado de Investigaciones e Inspección de Armas de Fuego de la Policía, y se le había concedido esa facultad.

Ponderados los argumentos de las partes, el foro apelativo intermedio revocó la Resolución emitida por el Superintendente. Indicó que la única prueba utilizada para fundamentar la decisión del foro administrativo fue una declaración jurada, la cual no fue incluida en el expediente del recurso de revisión judicial. De modo que concluyó que era improcedente que una declaración jurada pudiera servir como evidencia sustancial para sostener la revocación de las licencias. Más aún, expresó que el recurrido, al ser funcionario del Departamento, poseía las licencias por virtud del cargo que ocupa.

Por otro lado, determinó que la conclusión del peticionario de que el señor Rolón pudiese utilizar las

---

[4]Debemos señalar que el Superintendente de la Policía de Puerto Rico, representado por el Procurador General, le informó al Tribunal de Apelaciones que estaba a la "disposición de someterle a su atención en sobre lacrado los documentos obrantes en el expediente administrativo en que constan las variadas entrevistas realizadas, en adición a la prueba de la Sra. Reyes". Alegato en Oposición, Apéndice de *certiorari*, pág. 116. Sostuvo, además, que no lo incluía en el recurso como "medida protectora indispensable para evitar revelar la identidad de los informantes del Estado, tratándose de un asunto confidencial y sensitivo". Íd.

armas para causar daño a otras personas, era una mera especulación basada en un futuro incierto. Ello, en vista que no existía prueba sustancial que demostrara algún historial de violencia.[5]

En disconformidad con ese proceder, el Superintendente recurre antes nos. Arguye que el Tribunal de Apelaciones incidió al ordenar la devolución de las licencias de armas al concluir que su determinación no se sustentaba con prueba sustancial que estuviera en el expediente y así descartar la presunción de corrección que le aplica a las resoluciones de los entes administrativos. Asimismo, argumenta que el foro apelativo intermedio erró al catalogar como especulativo el asunto de la posibilidad de que el recurrido pudiese causar daño a otras personas.

Por su parte, después de este Tribunal haber expedido el recurso, y haberse perfeccionado el mismo, el señor Rolón compareció mediante una *Moción Informativa*. Arguye que el caso se tornó académico, ya que el Departamento, en calidad de su patrono, lo rearmó con su arma de reglamento. Por lo cual, señala que el Departamento, específicamente el Procurador General, tiene conocimiento que se encuentra rearmado a la misma vez que insiste en la revocación de las licencias y la incautación de las armas. En consecuencia, solicita que se declare no ha lugar el *certiorari*.

---

[5] La Juez Ortiz Flores disintió y sostuvo, en síntesis, que el recurrido no logró derrotar la presunción de corrección de la determinación administrativa.

Posteriormente, en respuesta a la moción presentada por el señor Rolón, el peticionario compareció ante nos. Informa que el recurrido, en su solicitud al Departamento para que fuera rearmado, obvió informar el procedimiento administrativo sobre la revocación de las licencias y la revisión judicial llevada a cabo en el Tribunal de Apelaciones, por lo que indujo a error al Departamento al sólo hacer referencia sobre el fin del procedimiento penal en su contra. Entiéndase, explicó que el rearme fue un error por el desconocimiento de los supervisores inmediatos del señor Rolón del recurso de revisión judicial llevado en este caso. Por ende, expresa que el Departamento activó nuevamente el protocolo y procedió a desarmar inmediatamente al recurrido.

A la luz del marco fáctico que antecede, procedemos a exponer el derecho aplicable.

**II**

**A.**

Sabido es que la doctrina de revisión judicial dispone que le corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina. Torres Rivera v. Policía de PR, 196 DPR 606, 625-626 (2016); Asoc. Fcias v. Caribe Speciality *et al*. II, 179 DPR 923, 941-942 (2010). En esa tarea, los tribunales apelativos estamos obligados a concederle deferencia a las decisiones de las agencias

administrativas. Ello, dado que, según hemos reconocido, son éstas las que tienen la experiencia y el conocimiento especializado sobre los asuntos que se le han delegado. Torres Rivera v. Policía de PR, supra, pág. 626. A raíz de esto, este Tribunal ha enfatizado que las determinaciones de los entes administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". Íd., pág. 626. Véanse, además, Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002-1003 (2011).

De esa forma, la Sec. 4.5 de la LPAU, supra, sec. 2175, establece el marco en el que ocurre la revisión judicial de las determinaciones de las agencias administrativas. Ese marco está fundamentado en el principio rector de la razonabilidad, es decir, se examina que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción. Torres Rivera v. Policía de PR, supra, pág. 626; Mun. San Juan v. Plaza Las Américas, 169 DPR 310, 323 (2006). Para ello, se dispone de tres criterios, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron

correctas, ello mediante una revisión completa y absoluta. Pagán Santiago v. ASR, 185 DPR 341, 358 (2012).

Conforme a lo anterior, este Tribunal ha dictaminado reiteradamente que la intervención judicial en las determinaciones administrativas debe ocurrir cuando la agencia haya actuado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009). Además, esa intervención debe ocurrir cuando la decisión no se fundamente en evidencia sustancial o la agencia se equivoque en la aplicación de la ley. OCS v. Universal, 187 DPR 164, 179 (2012).

Así pues, debemos recordar que las determinaciones de hecho que haga la agencia administrativa se deben sostener cuando se basen en evidencia sustancial que surja del expediente administrativo. Según hemos reiterado, la evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Otero v. Toyota, 163 DPR 716, 728-729 (2005) (Per curiam); Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2004). De esa forma, la parte afectada debe demostrar que existe otra prueba que refute la actuación de la agencia y demuestre que la decisión no está fundamentada en evidencia sustancial. González Segarra et al. v. CFSE, 188 DPR 252, 277 (2013).

Por su parte, las determinaciones de derecho pueden ser revisadas en su totalidad. No obstante, hemos señalado que se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. Asoc. Fcias. v. Caribe Specialty _et al._ II, supra, pág. 941. Por ende, hemos señalado que "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". Torres Rivera v. Policía de PR, supra, pág. 657.

**B.**

La Segunda enmienda de la Constitución de los Estados Unidos dispone, en lo pertinente, que "no se coartará el derecho del pueblo a tener y portar armas". Emda. II, Const. EE. UU., LPRA, Tomo 1. Al interpretar esa disposición, el Tribunal Supremo de los Estados Unidos ha expresado que ese derecho no es ilimitado. Es decir, no hay un derecho a poseer y portar cualquier arma de cualquier manera y para cualquier propósito. Véanse, McDonald v. City of Chicago, Ill., 561 U.S. 742 786 (2010); District of Columbia v. Heller, 554 U.S. 570, 626 (2008). De esa forma, quedó claro que el Estado está facultado para regular la posesión, portación y venta de las armas de fuego.

Acorde con lo anterior, el Estado, mediante ese poder inherente de reglamentación, y con el fin de promover una mayor seguridad y un mejor bienestar público para el Pueblo

de Puerto Rico, aprobó la Ley de Armas de Puerto Rico, Ley Núm. 404-2000, según enmendada, 25 LPRA sec. 455 et seq. Entre los fines específicos de esta ley, está unificar los requisitos para la concesión de las licencias de tener, poseer y portar armas. Véase, 2000 (Parte 3) Leyes de Puerto Rico 2602.

En ese sentido, esa ley facultó a la Policía y, por ende, a su Superintendente, como el ente administrativo especializado para regular lo concerniente a las armas y le otorgó el poder de reglamentar la concesión de éstas. Particularmente, dispuso una serie de requisitos que el Superintendente deberá tomar en cuenta para poder expedir esas licencias. Al respecto, el Art. 2.02, 25 LPRA sec. 456a(a), dispone que el solicitante debe tener veintiún años de edad; no ser ebrio habitual o adicto a sustancias controladas; no estar declarado incapaz mental por un tribunal; no incurrir ni pertenecer a organizaciones que incurran en actos de violencia o dirigidos al derrocamiento del gobierno; no haber sido separado de las Fuerzas Armadas bajo condiciones deshonrosas, o destituido de alguna de las agencias del orden público del Gobierno de Puerto Rico o sus municipios; no haber renunciado a la ciudadanía de los Estados Unidos; someter una declaración jurada atestiguando el cumplimiento con las leyes fiscales, y someter una certificación negativa de deuda de la Administración para el Sustento de Menores. En lo pertinente al caso de autos, ese mismo Artículo dispone

que el solicitante deberá presentar un certificado negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Art. 2.11 de esa Ley o sus equivalentes, tanto en Puerto Rico, los Estados Unidos o el extranjero. Además, no puede "estar bajo una orden del tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese compañero o a persona alguna, y **no tener un historial de violencia**". Íd. (énfasis suplido). Por último, debe someter en su solicitud una declaración jurada de tres personas que atestigüen que el peticionario goza de buena reputación en su comunidad, y que no es propenso a cometer actos de violencia, por lo que no tienen objeción a que tenga armas de fuego.

Ese mismo Artículo en su inciso (f), además, establece que se tiene que renovar la licencia cada cinco años, desde que la misma fue otorgada. Para ello, se instituyó como requisito entregar una declaración jurada en las que se haga constar "que las circunstancias que dieron base al otorgamiento original **se mantienen de igual forma** o indicando de qué forma han cambiado". Íd., 456a(f) (énfasis suplido).

Además de lo anterior, la ley faculta al Superintendente, después de conceder la licencia, a realizar las investigaciones que estime pertinente. De esa forma, se permite a ese funcionario revocar las licencias, si de la investigación surge que el investigado dio

información falsa o no cumple con los requisitos para otorgarle la licencia según expuesto en la ley. Íd., sec. 456a(c). Tras ser revocada la licencia, la ley impone la obligación de incautar todas las armas de fuego y municiones que tenga el investigado en su posesión. Asimismo, el Art. 7(e) del Reglamento de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como la "Ley de Armas de Puerto Rico", Reglamento Núm. 7311, Policía de Puerto Rico, 4 de marzo de 2007, págs. 19-20, dispone que, tras esa investigación, el Superintendente tiene plena facultad para eliminar el privilegio de la licencia de armas siempre y cuando concluya que la actuación de la persona atenta contra la seguridad pública.

Por otra parte, el Art. 2.11 de la Ley de Armas de Puerto Rico, 25 LPRA sec. 456j, dispone lo concerniente a los fundamentos para rehusar expedir la licencia o, de expedirse, para revocar. Allí se señala que serán revocadas las licencias a las personas que hayan sido convictas por cualquier delito grave o su tentativa, por conducta constitutiva de violencia doméstica, acecho y maltrato de menores. Además, tampoco podrán tener licencia de armas las personas con padecimientos mentales que los incapaciten para poseer un arma, los ebrios habituales o adictos al uso de narcóticos o drogas, ni las personas que hayan renunciado a la ciudadanía americana o que hayan sido separadas bajo condiciones deshonrosas de las Fuerzas Armadas de los Estados Unidos o destituido de alguna

agencia del orden público del Gobierno de Puerto Rico, ni la persona que haya sido convicta por alguna violación a las disposiciones de esas ley. Íd.

En consideración al marco jurídico enunciado, procedemos a resolver la controversia de epígrafe.

**III**

**A.**

Para resolver correctamente este caso, tenemos que examinar, conforme la doctrina de revisión judicial de las decisiones administrativas, si el señor Rolón logró impugnar la presunción de corrección que le cobija a la decisión del Superintendente; decisión que se fundamentó en el factor de tener un historial de violencia. Para ello, el recurrido alegó que no fue encontrado culpable de violación a la Ley de Prevención e Intervención con la Violencia Doméstica, que no procedieron las órdenes de protección y que tampoco han ocurridos altercados con su entonces esposa.

De esta forma, para resolver es obligatorio e imperativo dilucidar si para revocar las licencias de armas se puede utilizar como fundamento el criterio de tener un historial de violencia. En segundo término, de contestar la controversia anterior en la afirmativa, tenemos que resolver si para que una persona se considere que cuenta con un historial de violencia, es necesario que ésta haya sido encontrada culpable de algún delito.

Sabido es que al interpretar una ley debemos examinar por completo su contenido para determinar el significado de cada una de sus partes. Pueblo en interés menor L.R.R., 125 DPR 78, 86-87 (1989); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, pág. 315. Ello con el fin de aclarar ambigüedades y hacer de la ley un todo armónico y efectivo. Bernier y Cuevas Segarra, op. cit.; Aquino González v. A.E.E.L.A., 182 DPR 1, 39-40 (2011); Pueblo en interés menor L.R.R., supra. Es por esta razón que se ha establecido lo siguiente:

> [T]oda ley debe ser examinada y comparada sus partes, de suerte que sean hechas consistentes y tengan efecto. Para ello, deben interpretarse las diferentes secciones, las unas en relación con las otras, completando o supliendo lo que falte o sea oscuro en una con lo dispuesto en la otra, procurando siempre dar cumplimiento al propósito del legislador. Bernier y Cuevas Segarra, op. cit., pág. 315. Véanse, además, Pueblo v. Catalá Morales, 197 DPR 214, 226 (2017); Pueblo v. Santana Vélez, 168 DPR 30, 43 (2006).

Por tanto, "[n]o se pueden tomar aisladamente los distintos apartados de la ley, sino que deben tomarse todos en conjunto, o sea, íntegramente". Bernier y Cuevas Segarra, op. cit.; Aquino González v. A.E.E.L.A., supra, pág. 40; Pueblo en interés menor L.R.R., supra, pág. 87.

De entrada, una interpretación aislada del Art. 2.11, el cual codifica los contornos de **la revocación** de las licencias, nos conduciría al automatismo de concluir que no se incluye taxativamente el requisito de tener un historial de violencia como causa de revocación. Ello, al

disponer como causas para la revocación de las licencias ser convicto por delitos graves o sus tentativas, por conductas constitutivas de violencia doméstica, acecho y maltrato de menores. Además, el Artículo expresa que se revocarán las licencias a las personas con padecimientos mentales, ebrios habituales o adictos a narcóticos y drogas, personas que hayan renunciado a la ciudadanía americana, que hayan sido separadas de las fuerzas armadas o de alguna agencia del orden público, y las personas que hayan sido convictas por alguna de las disposiciones de esa ley.

Más sin embargo, tal interpretación produciría un resultado absurdo y contrario al resto de los articulados que regulan el proceso de licenciamiento de armas y al propósito legislativo. Véanse, Cordero Vargas v. Pérez Pérez, supra, pág. 18; Rosado Molina v. ELA, supra, pág. 590; Spyder Media, Inc. v. Mun. de San Juan, supra, págs. 555-556. Veamos.

Al examinar todos los artículos pertinentes de la Ley de Armas de Puerto Rico, surge que el elemento de historial de violencia está expresamente incluido en **los requisitos para la concesión** de las licencias. Es decir, la ley reconoce que sólo se podrá conceder las licencias de armas, cuando las personas, entre otros requisitos, no tengan historial de violencia. Incluso, se requiere que tres personas realicen declaraciones juradas en las que atestigüen que el solicitante goza de buena reputación y

**no es propenso a cometer actos de violencia**. 25 LPRA sec. 456a(a)(12).

Más relevante aún, la ley en su Art. 2.02, inciso (f), requiere que la persona **mantenga durante todo momento**, las mismas circunstancias y condiciones que dieron base para el otorgamiento original de las licencias, incluyendo el no tener historial de violencia. Íd., sec. 456a(f). Además, en el inciso (c) de ese mismo Artículo se faculta al Superintendente a realizar las investigaciones que sean necesarias para asegurar que la persona continúe cumpliendo con los requisitos para tener las licencias de armas, lo que también incluye no tener historial de violencia. Íd., sec. 456a(c).

De un análisis integral de todos los artículos pertinentes se desprende que tener un historial de violencia excluye en todo momento la posibilidad de tener licencias de armas. Una lectura aislada del Art. 2.11, podría descartar la posibilidad de que el historial de violencia deba ser considerado como un causante para revocar las licencias e inducirnos a concluir erróneamente que se podría revocar las licencias por otras causales, excepto por tener historial de violencia. No obstante, de una lectura armoniosa de los artículos de la Ley de Armas de Puerto Rico surge que en todo momento la persona no puede tener un historial de violencia. Así lo demuestra el hecho de que al momento de solicitar las licencias, el Art. 2.02 (a)(7), expresamente requiere que el solicitante no

tenga historial de violencia. Incluso, en el inciso (a)(12) se exige que debe probar con declaraciones juradas que tiene buena reputación y **no es propenso de comer actos de violencia.** A su vez, el inciso (c) faculta al Superintendente a investigar al poseedor de las licencias, y si de ella surge que no se cumple con los requisitos de ese Art. 2.02, incluyendo no tener historial de violencia, ordena que se revoque e incaute inmediatamente las licencias, las armas y municiones que tenga.

Así también, ese mismo Artículo en el inciso (f) obliga a los poseedores de las licencias a renovar las mismas cada cinco años. Para ello, deben entregar una declaración jurada en la cual hagan constar que las circunstancias que dieron base al otorgamiento original, como el hecho de no tener historial de violencia, se mantienen de igual forma o indicando de qué forma han cambiado.

Por todo lo antes mencionado, resolvemos que la Policía y el Superintendente tienen la facultad en ley para revocar las licencias de armas por el hecho de que la persona tenga un historial de violencia. Resolver lo contrario, provocaría un desfase entre el Art. 2.11 y lo establecido en el Art. 2.02. Sería un contrasentido que la ley facultara al Superintendente a no conceder y tampoco renovar la licencia por el hecho de tener un historial de violencia, mientras no se permite que se revoque por esos mismos hechos. Más aún, cuando el inciso (c) del Art. 2.02

permite a esta agencia realizar las investigaciones pertinentes y de encontrar que no se cumple con los requisitos para conceder la licencia, entre ellos no tener historial de violencia, puede revocarla.

**B.**

Resuelto lo anterior, en segundo término, debemos resolver si para revocar una licencia de armas por tener historial de violencia es necesario que una persona sea sentenciada o convicta por algún delito. De una lectura equilibrada de los artículos antes citados concluimos que no. Para una determinación en el cauce administrativo de que un poseedor tiene un historial de violencia, conforme la Ley de Armas de Puerto Rico, no necesariamente tiene que ser encontrado culpable en el ámbito penal.

En el Art. 2.02 de la Ley de Armas de Puerto Rico ser encontrado culpable por algún delito y tener historial de violencia son dos requisitos distintos y apartes. Bajo el inciso (a)(2) se requiere presentar un certificado negativo de antecedente penales y no estar acusado ni pendiente de juicio por los delitos enumerados en el Art. 2.11. Mientras, de manera aparte y separado, en el inciso (a)(7) del Art. 2.02 se requiere, entre otras cosas, no tener historial de violencia.

En ese aspecto, razonamos que cuando se codificó el Art. 2.02, la Asamblea Legislativa intimó que era importante que el Superintendente tomara en cuenta el historial de violencia de la persona y no sólo si fue

convicto por algún delito. Ello se reafirma por el factor de que la Asamblea Legislativa enumeró otros criterios a tomar en consideración cuando se vaya a expedir una licencia, más allá de cometer delitos, tales como si la persona es ebrio o adicto a sustancias controladas, es incapaz mental, ha incurrido en actos de violencia, ha sido separado de las fuerzas armadas o agencias del orden público, se le ha prohibido por orden judicial acosar, espiar, amenazar. Además, se le requiere presentar declaraciones juradas de tres personas que atestigüen que el peticionario no es propenso a cometer actos de violencia, por lo cual no tienen objeción de que tenga armas de fuego. Todo ello, confirma que la Asamblea Legislativa quiso que la Policía examinara si la persona, más allá de ser un acusado o convicto, tiene la capacidad mental y emocional para tener un arma de fuego, estableciendo criterios de ausencia de historial de violencia separados del criterio de tener una condena criminal. Incluso, el Reglamento de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como la "Ley de Armas de Puerto Rico", supra, permite que el Superintendente pueda eliminar el privilegio de la licencia de armas siempre y cuando concluya que la actuación de la persona atenta contra la seguridad pública.

Por consiguiente, resolvemos que el criterio de no tener historial de violencia no necesariamente requiere que la persona haya sido encontrada culpable de algún

delito. Es decir, tener historial de violencia se refiere a ciertos tipos de actos o conductas violentas o agresivas que lleve a cabo el solicitante en la cual la Policía, bajo su conocimiento especializado, entienda que es necesario, como medida preventiva, no conceder las licencias de armas y no permitir actos ilegales o desgraciados con el uso de un arma de fuego. Recuérdese que la Policía tiene la obligación de proteger en prevención a las personas y la propiedad.[6] Así pues, se le concedió el poder de no conceder, no renovar o revocar las licencias de armas como medidas preventivas a posibles actos violentos. Por lo cual, el factor de no tener un historial de violencia es válido y acorde con los principios y los propósitos de las leyes de armas y de la Policía.

**IV**

**A.**

Concluido que el Superintendente podía utilizar como fundamento para revocar las licencias de armas el criterio de historial de violencia, y que este no requiere que la persona haya sido encontrada culpable de un delito, lo que procede es resolver si en el caso de epígrafe, finalmente, el recurrido logró impugnar la presunción de corrección

---

[6]Nótese que la Ley de la Policía de Puerto Rico de 1996, Ley Núm. 53 de 10 de junio de 1996, según enmendada, 25 LPRA sec. 3102, establecía entre otras cosas, la obligación de proteger a las personas y propiedad, mantener y conservar el orden público, prevenir, descubrir, investigar y perseguir el delito. Tal obligación fue incluida en la Ley del Departamento de Seguridad Pública de Puerto Rico, Ley Núm. 20-2017, según enmendada, que derogó la Ley de la Policía de Puerto Rico de 1996.

que le cobija al Superintendente, o si al contrario, la decisión administrativa, en efecto, se basó en evidencia sustancial que obre en el expediente. Concluimos que el recurrido no logró rebatir la presunción de corrección.

Con relación a ello, el peticionario sostiene que el foro apelativo intermedio erró al revocarlo y ordenar la devolución de las licencias de armas bajo el fundamento que la determinación administrativa no estaba sustentada con evidencia sustancial que obrara en el expediente administrativo. A su vez, alega que incidió al catalogar como especulativo el asunto de la posibilidad de que el señor Rolón pueda causar daño a otra persona interviniendo con las consideraciones de seguridad que tuvo la Policía. Por último, sostuvo que el Tribunal de Apelaciones erró al descartar la presunción de corrección que tienen las decisiones administrativas.

Por su parte, el recurrido arguye que sus armas de fuego fueron removidas por el caso de violencia doméstica, el cual no prosperó, y que tampoco se expidieron las órdenes de protección que solicitó su entonces esposa. A su vez, se limitó a alegar que el caso se había tornado académico debido a que fue rearmado en su trabajo en el Departamento.

Luego de examinar los documentos que obran en autos, además del expediente administrativo de la Policía, resolvemos que el Tribunal de Apelaciones erró al revocar la decisión del Superintendente. El foro apelativo

intermedio se basó en que la revocación de las licencias sólo se fundamentó en una declaración jurada de la entonces esposa del recurrido. De esa forma, concluyó que una declaración jurada no podía ser suficiente para sostener la revocación de las licencias a pesar que las posee en virtud de la plaza que ocupa. No estamos de acuerdo con ese raciocinio.

Como hemos discutido, las determinaciones de las agencias administrativas poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. Así, pues, cuando se recurra de una decisión administrativa, la parte afectada está obligada, si pretende refutarla, a demostrar, con prueba fehaciente, que la decisión no se fundamentó en evidencia sustancial. La carga probatoria la tiene el que pretenda impugnar la decisión administrativa. De modo, que los tribunales apelativos tendremos que examinar las alegaciones del que impugne e inspeccionar si presentó, ante la agencia, evidencia que refute la decisión. Para ello, podremos examinar el expediente a ver si, a la luz de las alegaciones contenidas en el recurso de revisión judicial, logró rebatir la presunción de corrección, o si existe evidencia sustancial que apoye la decisión de la agencia.

En el caso antes nos, al examinar los alegatos de las partes encontramos que el recurrido no presentó prueba que

refute la actuación de la Policía y demuestre que la decisión no está fundamentada en evidencia sustancial. En los expedientes de la revisión judicial el señor Rolón no señaló qué prueba, si alguna, presentó ante el oficial examinador para refutar la determinación del Superintendente. Mucho menos incluyó prueba sobre lo ocurrido en la vista administrativa. De los expedientes surge que se limitó a incluir como prueba, documentos del caso de divorcio, del caso de violencia doméstica y de las peticiones de órdenes de protección. Esos documentos no son, según discutido, pertinentes para rebatir el hecho de que tiene un historial de violencia. No es necesario que la persona haya sido encontrada culpable de algún delito ni que haya procedido una orden de protección para tener un historial de violencia. Por esta razón, debemos darle deferencia a la decisión de esa agencia administrativa. Recuérdese que las decisiones de las agencias administrativas tienen una presunción de corrección que los tribunales apelativos, como norma general, debemos respetar.

A esos efectos, el foro apelativo intermedio incidió al descartar la presunción de corrección que tiene la decisión del Superintendente. Debió primero examinar las alegaciones y la prueba presentada del recurrido y determinar si logró rebatir esa presunción. Para ello, podía examinar si existía evidencia sustancial por parte del Superintendente que superara las alegaciones del señor

Rolón. No obstante, el Tribunal de Apelaciones erró por el hecho que le impuso la carga probatoria al peticionario. Más allá de examinar las alegaciones del recurrido, se limitó a analizar qué prueba se presentó en el apéndice del recurso de revisión judicial que sustentara la decisión del Superintendente. De esta forma, no aplicó la presunción que le cobija a la decisión de la agencia.

Al realizar el análisis que hemos mencionado, concluimos que el recurrido no logró rebatir la presunción de corrección de la agencia. El expediente administrativo de la Policía, que pusieron a la disposición del Tribunal de Apelaciones y que nos fue provisto, contiene, además de la declaración jurada, los documentos de los entrevistados por la agente encargada de la investigación de campo. Allí constan sobre doce entrevistas a diferentes personas cercanas al señor Rolón en las cuales se desprende que varios de ellos tenían reparos en cuanto a la concesión de las licencias de armas. Asimismo, surge de ese expediente el informe del resultado de la investigación sobre la solicitud de la licencia y la certificación del análisis de la solicitud de arma en el que se explica la razón de la revocación de las licencias.

A la luz de todos esos documentos, estos claramente contienen evidencia sustancial que fundamenta la decisión de la agencia administrativa, en este caso la Policía. Nótese que la evidencia sustancial ha sido definida como aquella prueba relevante que una mente razonable podría

aceptar como adecuada para sostener una conclusión. Rebollo v. Yiyi Motors, supra. No nos cabe duda que la prueba que contiene el expediente administrativo de la agencia sostiene la razonabilidad de la revocación de las licencias. Su entonces esposa, por medio de la declaración jurada, y varias personas entrevistadas tuvieron reparos en cuanto a que éste poseyera un arma de fuego. Por tanto, consideramos que la evidencia que contiene el expediente es la razonable para sostener la decisión de la Policía.[7]

Además, resolvemos que el Tribunal de Apelaciones incidió al revocar la determinación del Superintendente fundamentado en que es especulativo que el señor Rolón pueda hacer uso de sus armas y municiones para causar daños a otras personas. No nos parece que la determinación de la Policía, que dicho sea de paso es la agencia con la experiencia y el conocimiento especializado en seguridad en Puerto Rico, haya sido especulativa. Ineludiblemente, existe evidencia sustancial de la razonabilidad de la

---

[7]Por otro lado, destacamos que el Tribunal de Apelaciones erró al fundamentar su decisión en que el señor Rolón es un funcionario del Departamento y que posee las licencias de armas en virtud de la plaza que ocupa. A pesar que la posición que ocupa el recurrido le puede requerir tener un arma de fuego y la Ley de Armas de Puerto Rico así se lo permite, esta última solamente faculta al Superintendente a conceder las licencias correspondientes. 25 LPRA sec. 456c. De manera que el hecho que tenga un trabajo que le requiera tener un arma, no suprime el poder del Superintendente para determinar cuándo la persona no está apta para poseerla. Incluso el Art. 2.1 del Reglamento de armas de fuego y municiones para Fiscales, Procuradores, Agentes y personal autorizado del Departamento de Justicia de Puerto Rico, de 1 de abril de 2012, señala que sólo podrán utilizar armas de reglamento los funcionarios autorizados por ley.

decisión del Superintendente como medida preventiva a un incidente lamentable. Como mencionamos, varias personas cercanas dejaron saber en sus correspondientes entrevistas la preocupación al respecto. Así también, la declaración jurada de su entonces esposa en la cual plasmó las amenazas. Estos hechos son suficientes para que la Policía, como ente encargado de la seguridad y prevención de violencia, tomara las medidas razonables en un caso que podría culminar en un incidente lamentable.

Conforme a lo anterior, con nuestra decisión no podemos ni debemos impedir que se puedan revocar las licencias de armas como medida preventiva ante un posible daño a una persona o propiedad. Ciertamente, las medidas preventivas están dirigidas a evitar incidentes lamentables. Según el derecho expuesto, para eso la Asamblea Legislativa facultó a la Policía como el ente especializado para determinar, según sus experiencias y conocimientos, cuando es necesario, de acuerdo con las circunstancias particulares de cada caso, el revocar las licencias de armas como medida preventiva. El resolver como solicita el recurrido, y que el Tribunal de Apelaciones avaló, es concluir que sólo se podrán revocar las licencias de armas después que ocurra una desgracia. Es decir, habría que esperar por tener la evidencia de que ocurrió un hecho lamentable para poder revocar esas licencias. No podemos avalar ese razonamiento. Como hemos señalado anteriormente, tanto la Ley de Armas de Puerto Rico como

su reglamento facultan al Superintendente para revocar las licencias de armas siempre y cuando entienda que se atenta contra la seguridad pública.

Es por todo lo anterior, que al examinar la Resolución emitida por la Policía encontramos que su actuación estaba dentro de los poderes delegados y son compatibles con la política pública que la origina. Ante la falta de una actuación arbitraria, ilegal o irrazonable por el Superintendente, lo que resta es revocar al Tribunal de Apelaciones y reinstalar la Resolución emitida por la Policía de Puerto Rico.[8]

**V**

---

[8]Por último, y no menos importante, debemos resaltar que el señor Rolón en su comparecencia tardía ante este Tribunal, nos expuso que el caso se había tornado académico por el hecho de que en su trabajo en el Departamento lo habían rearmado con su arma de reglamento. Por esa razón, alegó que era un contrasentido que el mismo Departamento lo hubiera rearmado mientras a la misma vez, por medio del Procurador General, solicitaba ante este Tribunal que se revocaran las correspondientes licencias. Sin embargo, el Procurador General oportunamente nos hizo saber que fue un error del Departamento, que se activó nuevamente el protocolo correspondiente y se desarmó al recurrido. Ello, puesto que los supervisores del señor Rolón no tenían conocimiento de la revisión judicial de este caso. Al contrario, incluyó evidencia de la solicitud en la que el recurrido solamente expresó que había pasado más de un año y medio desde el proceso criminal en el cual no fue encontrado culpable y que, en ese tiempo, no hubo un altercado ni procedieron las órdenes de protección presentadas en su contra. Mas no indicó que todavía quedaba pendiente el proceso de revisión administrativo. Además, el Procurador General incluyó una comunicación confidencial en la cual el Departamento reconoció que el señor Rolón no notificó el resultado de la investigación administrativa de la Policía y se desconocía, al momento del rearme, qué determinación había tomado, si alguna, la Policía.

Por los fundamentos enunciados, revocamos el dictamen del Tribunal de Apelaciones. En consecuencia, se reinstala en su totalidad la Resolución emitida por el Superintendente de la Policía de Puerto Rico.

Se dictará Sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Rolón Martínez<br><br>Recurrido<br><br>v.<br><br>Superintendente de la Policía de Puerto Rico, Hon. José L. Caldero López<br><br>Peticionario | CC-2016-0587 | *Certiorari* |

SENTENCIA

San Juan, Puerto Rico, a 27 de agosto de 2018.

Por los fundamentos enunciados, se revoca el dictamen del Tribunal de Apelaciones. En consecuencia, se reinstala en su totalidad la Resolución emitida por el Superintendente de la Policía de Puerto Rico.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una opinión concurrente a la cual se une el Juez Asociado señor Feliberti Cintrón.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Francisco Rolón Martínez

      Recurrido

        v.               CC-2016-0587

Superintendente de la Policía
de Puerto Rico, José L.
Caldero López

      Peticionario

Opinión Concurrente emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 27 de agosto de 2018.

Coincido con el Tribunal en expedir el auto y revocar al Tribunal de Apelaciones. Sin embargo, discrepo muy respetuosamente del remedio dispuesto en la Opinión que suscribe este Tribunal. La prueba a base de la que la mayoría emite su dictamen no estuvo ante la consideración del Tribunal de Apelaciones. El Sr. Francisco Rolón Martínez no incluyó en el apéndice del recurso de revisión judicial -porque no podía- los informes de las entrevistas que se realizaron durante la investigación sobre reputación y conducta, ni el informe final de la agente que llevó a cabo esa

investigación. Tampoco incluyó en el apéndice la declaración jurada de su exesposa. Por su parte, el Tribunal de Apelaciones erró al no elevar los autos originales de la Policía de Puerto Rico ni ordenarle al Procurador General que le proveyera copia de esos documentos cuando el propio Procurador General le notificó de la existencia de estos y de su disponibilidad para producirlos en sobre sellado.

Este Tribunal no tiene discreción para examinar prueba que no formó parte de los autos del Tribunal de Apelaciones. Por lo tanto, ya que esa prueba es confidencial, obra en los autos del foro administrativo y fue ofrecida al Tribunal de Apelaciones devolvería el caso a ese foro y le instruiría que eleve el expediente original de la Policía u ordene al Procurador General proveerle copia de los informes de la investigación sobre reputación y conducta y de la declaración jurada, para que los evalúe en conjunto con el resto de los documentos que obran en los autos de este caso y resuelva la controversia en sus méritos. Hacer otra cosa nos convierte en el primer tribunal que revisa a la agencia administrativa. Ese es el rol del Tribunal de Apelaciones. No es el nuestro.

I

El 26 de junio de 2014, el Superintendente de la Policía (Superintendente) le informó mediante carta al señor Rolón Martínez que le revocó sus licencias de armas. Ante esto, el señor Rolón Martínez solicitó una vista administrativa, la cual se celebró el 16 de octubre de

2014. El oficial examinador que presidió la vista rindió un informe. Concluyó en su informe que "[l]a evidencia que obra en el expediente demuestra que el señor Rolón Martínez, puede hacer uso ilegal de las armas y municiones para causar daños a otras personas por haber proferido amenazas contra la Sra. Glorie Ann Reyes Soto". Informe del Oficial Examinador, Apéndice del certiorari, pág. 43.

El 11 de noviembre de 2014, el Superintendente emitió una resolución en la que acogió las conclusiones del informe del oficial examinador y confirmó la revocación de las licencias de armas. En lo pertinente, hizo constar las siguientes determinaciones de hechos:

> Como consecuencia de la ocupación [de las armas] se ordenó [una] investigación de campo en cuanto a la reputación y conducta del peticionario para determinar si este cumplía con los requisitos establecidos en "La Ley de Armas" para la concesión de la licencia. Esta fue realizada por la Agte. Milagros López Rodríguez, Adscrita [a la] División de Investigación y permisos de Armas de Fuego. Como resultado de esta investigación la Agte. López recomendó desfavorable la investigación para tener licencia de armas de fuego el peticionario.

> La Sra. Reyes ha declarado en diferentes ocasiones, inclusive en la vista administrativa que teme por su vida por expresiones de amenaza de muerte que ha sido objeto por parte del Sr. Rolón-peticionario en diferentes ocasiones. Sobre esto presentó declaración jurada notariada. Resolución, Apéndice del certiorari, pág. 37.

Inconforme, el señor Rolón Martínez presentó un recurso de revisión judicial ante el Tribunal de Apelaciones. Señaló que el foro administrativo erró al confirmar la revocación de las licencias de armas, ya que no fundamentó su determinación con prueba en el expediente

y no aplicó el *quantum* de prueba clara, robusta y convincente. Alegó que el foro administrativo erró al concluir que podía causar daños a otras personas, ya que eso era una mera especulación basada en un futuro incierto. Arguyó que del expediente surgía que la denuncia y las órdenes de protección no prosperaron y que lo único que constaba en el expediente era la declaración jurada de su entonces esposa, la Sra. Glorie Ann Reyes Soto. Finalmente, argumentó que no existía evidencia que sustentara la revocación de sus licencias de armas. El señor Rolón Martínez incluyó en el apéndice del recurso de revisión judicial varios documentos relativos al caso de custodia y al de violencia doméstica, además de las peticiones de órdenes de protección de la señora Reyes Soto, entre otros documentos. No obstante, no presentó ante el foro apelativo intermedio el informe final de la investigación sobre reputación y conducta en el que se basó el Superintendente para revocarle las licencias de armas. Tampoco incluyó en el apéndice de su recurso los informes de la investigación sobre reputación y conducta en los que constan las entrevistas ni la declaración jurada que prestó la señora Reyes Soto.

El Procurador General se opuso. Sostuvo que el expediente contenía evidencia sustancial para sostener la determinación de la Policía. Reveló que existe un expediente administrativo confidencial que demuestra que la gran mayoría de los entrevistados durante la investigación sobre reputación y conducta que se realizó

en relación al señor Rolón Martínez se abstuvieron de realizar comentarios u observaciones y que tres de los doce entrevistados realizaron comentarios acerca del carácter de este. Sin embargo, admitió que no se consignó nada sobre el contenido de esas entrevistas en las determinaciones de hechos de la resolución mediante la cual se le revocaron las licencias de armas al señor Rolón Martínez. Oposición, Apéndice del certiorari, pág. 108.

El Procurador General también alegó que el Superintendente actuó de manera razonable al acoger las conclusiones del oficial examinador, ya que no procedía que el señor Rolón Martínez retuviera las licencias de armas a la luz de las entrevistas y a base de la totalidad del expediente administrativo y de los hechos probados en la vista administrativa. Finalmente, indicó que estaba dispuesto a someter a la atención del Tribunal de Apelaciones en un sobre sellado los documentos obrantes en el expediente administrativo confidencial en que constan las entrevistas realizadas durante la investigación sobre reputación y conducta, así como la declaración jurada de la señora Reyes Soto. Oposición, Apéndice del certiorari, pág. 116. Indicó que si el foro apelativo intermedio solicitaba examinar esos documentos los presentaría ante ese tribunal en sobre sellado, ya que se trataba de un asunto confidencial y sensitivo. Íd.

El Tribunal de Apelaciones no se expresó en torno al ofrecimiento del Procurador General. Así, el Procurador General nunca presentó ante ese tribunal la parte

confidencial del expediente, la cual contiene la prueba en la que se basó el foro administrativo para revocar las licencias de armas. El foro apelativo intermedio tampoco utilizó el mecanismo que provee la Regla 77 del Reglamento del Tribunal de Apelaciones, infra, para elevar los autos originales de la Policía.

El Tribunal de Apelaciones revocó el dictamen de la Policía sin antes examinar la prueba que obraba en el expediente administrativo confidencial. Fundamentó su determinación en que en el expediente ante su consideración no obraba evidencia sustancial que sustentara la revocación de las licencias de armas. Sentencia, Apéndice del certiorari, pág. 12. Indicó que la declaración jurada de la señora Reyes Soto a base de la cual el Superintendente emitió su determinación, no obraba en los autos del caso. Íd. A la luz de ello, expresó que la determinación del Superintendente de que el señor Rolón Martínez podría causar daños a otras personas en el futuro por alegadamente haber proferido amenazas a la señora Reyes Soto es una especulación basada en un futuro incierto. Así, resolvió que el señor Rolón Martínez rebatió la presunción de corrección de la determinación administrativa.

En desacuerdo, el 20 de junio de 2016, el Procurador General presentó una petición de certiorari ante nos. Señaló que el Tribunal de Apelaciones erró al concluir que la determinación administrativa no estaba apoyada en evidencia sustancial que surgiera del expediente administrativo y que ese foro no debió intervenir con las

consideraciones de seguridad que tuvo la agencia. Por otro lado, arguyó que el foro apelativo intermedio erró al catalogar como especulativo que el señor Rolón Martínez pueda causar daño a otras personas por haber amenazado a su exesposa. Finalmente, alegó que el Tribunal de Apelaciones erró al descartar la presunción de corrección del dictamen administrativo.

El Procurador General no incluyó en el apéndice de la petición de certiorari los informes de las entrevistas que se realizaron durante la investigación sobre reputación y conducta ni el informe final de la agente que realizó esa investigación ni la declaración jurada de la señora Reyes Soto. El expediente tampoco contiene transcripción o regrabación de la vista administrativa.

Acogimos la petición de certiorari y, el 26 de abril de 2017, el caso quedó sometido en los méritos para su adjudicación.

El 26 de junio de 2017, el señor Rolón Martínez presentó una "Moción informativa" ante nos. Indicó que la controversia se había tornado académica, ya que la Policía le devolvió sus armas de fuego y licencias de armas luego de que el Tribunal de Apelaciones emitió su Sentencia. Por ello, solicitó que proveyéramos no ha lugar a la petición de certiorari.

El 7 de julio de 2017, emitimos una Resolución en la que le concedimos al Procurador General un término de veinte días para expresarse en torno a la moción informativa sobre academicidad del señor Rolón Martínez.

El 25 de julio de 2017, el Procurador General presentó su respuesta mediante una "Moción en cumplimiento de resolución". Alegó que el señor Rolón Martínez fue rearmado a causa de un error administrativo. Señaló que la omisión de la Policía en ese asunto ya había sido rectificada. Junto a esa moción y transcurrido más de un año desde que presentó su petición de *certiorari* ante este foro, el Procurador General presentó por primera vez ante un tribunal la prueba en la que se basó la Policía para revocarle las licencias de armas al señor Rolón Martínez. Anejó a su moción el expediente confidencial del señor Rolón Martínez, el cual contiene los informes de las entrevistas que se realizaron como parte de la investigación sobre reputación y conducta, así como el informe final de la agente que llevó a cabo esa investigación. Ese expediente confidencial también contiene la declaración jurada de la señora Reyes Soto. El Procurador General señaló que entendía prudente elevar el expediente administrativo original de la Policía en ese momento para que este Tribunal tuviera "todos los elementos de juicio para evaluar el recurso ante su consideración". Moción en cumplimiento de resolución, pág. 6. El Procurador General no podía incluir el expediente confidencial en el apéndice del recurso de *certiorari*, pues no forma parte de los autos del Tribunal de Apelaciones. Regla 34(d) del Reglamento del Tribunal Supremo, *infra*.

II

El Art. 4.002 de la Ley de la Judicatura de 2003, 4 LPRA sec. 24(u), dispone que el Tribunal de Apelaciones

cumplirá el propósito de proveer a los ciudadanos de un foro apelativo mediante el cual un panel de no menos de tres jueces revisará, como cuestión de derecho las decisiones finales de los organismos y agencias administrativas. El foro apelativo intermedio deberá cumplir con el objetivo de dar mayor acceso a la ciudadanía a los procesos judiciales. Íd. Deberá ofrecer acceso fácil, económico y efectivo a sus procedimientos, eliminando obstáculos y barreras que impidan impartir justicia apelativa a los ciudadanos con reclamos válidos. Íd.

La revisión como cuestión de derecho de las decisiones finales de los organismos y agencias administrativas se tramitará de conformidad con las disposiciones de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 2101 et seq. Íd. La Sec. 4.2 de la LPAU, 3 LPRA sec. 2172, establece que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones.

La intervención judicial en las determinaciones administrativas debe ocurrir cuando la agencia haya actuado de forma arbitraria, ilegal o irrazonable. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009). La Sec. 4.5 de la LPAU, 3 LPRA sec. 2175, establece que los tribunales deben revisar las determinaciones administrativas a la luz de tres criterios: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia

sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta. Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).

El procedimiento a seguir para los recursos de revisión judicial será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Véase, LPAU, 3 LPRA sec. 2176. Ese reglamento establece las normas sobre el contenido de los recursos de revisión judicial en aras de que ese foro esté en posición de resolver los casos en los méritos a la luz de los tres criterios que establece la Sec. 4.5 de la LPAU, supra. En lo pertinente a este caso, el inciso (f) de la Regla 59 del Reglamento del Tribunal de Apelaciones, supra, dispone que el apéndice de un recurso de revisión judicial debe contener copia literal de cualquier "documento que forme parte del expediente original en la agencia y que pueda ser útil al Tribunal de Apelaciones en la resolución de la controversia".

El señor Rolón Martínez omitió incluir en el apéndice del recurso de revisión judicial que presentó ante el Tribunal de Apelaciones la prueba en la que la Policía fundamentó su determinación de revocarle las licencias de armas. Esto es, el informe final que preparó la agente que realizó la investigación sobre reputación y conducta, y la declaración jurada que prestó la señora Reyes Soto. Ya que la resolución administrativa estuvo basada en el contenido de esos documentos, es evidente que eran esenciales para

adjudicar la controversia que se planteó ante el Tribunal de Apelaciones. Es decir, era necesario que el foro apelativo intermedio examinara esa prueba para determinar si sostenía la presunción de corrección de la agencia o si la prueba que presentó el señor Rolón Martínez era suficiente para rebatirla. Esto se debe a que la parte afectada por una determinación administrativa debe demostrar ante el foro revisor que existe otra prueba que refuta la actuación de la agencia, que la decisión no está fundamentada en evidencia sustancial o que existe prueba que reduce el valor de la evidencia impugnada. González Segarra et al. v. CFSE, 188 DPR 252, 277 (2013).

Ahora bien, la Regla 59 del Reglamento del Tribunal de Apelaciones, supra, dispone que la omisión de incluir los documentos del apéndice no será causa para desestimar el recurso. Cónsono con ello, la Regla 12.1 del Reglamento de Tribunal de Apelaciones, supra, dispone que "[p]or causa debidamente justificada, el Tribunal de Apelaciones deberá proveer una oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes". Adoptamos la Regla 12.1, supra, para salvaguardar el propósito principal de las reglas internas del foro apelativo intermedio, que incluye específicamente proveer un acceso efectivo a ese Tribunal. Véase, Art. 4.004, Ley de la Judicatura, supra.

Es evidente que el señor Rolón Martínez no presentó la prueba que obra en el expediente administrativo confidencial

porque no tenía acceso a esta.[9] En su oposición al recurso de revisión judicial, el Procurador General se ofreció a proveerle al Tribunal de Apelaciones esa prueba en sobre sellado y enfatizó que era confidencial. Ya que esa prueba era claramente necesaria para adjudicar el caso, el tribunal debió ordenarle al Procurador General que la produjera en sobre sellado, tal como este la ofreció. Sin embargo, el foro apelativo intermedio hizo caso omiso al ofrecimiento del Procurador General y, como consecuencia, la prueba que obra en el expediente administrativo confidencial nunca se presentó ante ese tribunal.

Ante estas circunstancias, el foro apelativo intermedio estaba impedido de emitir un juicio acertado sobre la actuación del Superintendente. Es decir, la omisión de los informes de la investigación sobre reputación y conducta y la declaración jurada en los autos del Tribunal de Apelaciones causó un impedimento real y meritorio para que ese foro pudiese considerar la controversia en sus méritos.

---

[9] Este Tribunal ha repudiado la práctica administrativa de adjudicar controversias a la luz de evidencia secreta que no puede ser conocida, explicada o rebatida por las partes. Torres Ramos v. Policía de PR, 143 DPR 783, 796 (1997). La LPAU recoge un principio básico de derecho administrativo que postula que al ejercer su poder adjudicativo, las agencias tienen que actuar a base de la totalidad de la prueba en el expediente y que, para adjudicar una controversia, no pueden considerar ex parte prueba desconocida por las partes. Una parte tiene derecho a saber cuál es la prueba que existe en su contra y a presentar toda la evidencia necesaria y admisible para sostener su reclamo y para refutar los planteamientos y argumentos de la parte adversa. Íd., pág. 795. A pesar de que reconocemos que podría suscitarse una controversia respecto al acceso a la información en este caso, no nos corresponde dilucidarlo en esta ocasión.

Para remediar esa situación, el foro apelativo intermedio podía ordenarle al Procurador General proveerle el expediente confidencial o, en la alternativa, ordenar que se elevara el expediente original de la Policía, según provee la Regla 77 del Reglamento del Tribunal de Apelaciones, supra. Hemos reconocido que el mecanismo que proporciona la Regla 77, supra, resulta adecuado cuando el Tribunal de Apelaciones no tiene ante sí toda la prueba necesaria para ejercer su discreción en un recurso de revisión judicial. Véase, Emmanuelli v. Palmas, 160 DPR 182, 193-194 (2003). No obstante, el Tribunal de Apelaciones no optó por ninguna de las anteriores. Por lo tanto, abusó de su discreción al intervenir en el caso sin evaluar la prueba que obra en el expediente confidencial del señor Rolón Martínez.

La mayoría ignoró ese hecho y se adentró a considerar la prueba que obra en el expediente administrativo confidencial en aras de resolver la controversia en los méritos. Luego de evaluar el contenido de los informes de la investigación sobre reputación y conducta en conjunto con la declaración jurada de la señora Reyes Soto, resolvió que el Tribunal de Apelaciones erró al limitarse a analizar la prueba que presentó el señor Rolón Martínez en el apéndice del recurso de revisión judicial y que, al hacerlo, no aplicó la presunción que le cobija a la decisión de la agencia. Opinión, pág. 26. Entonces, en lugar de devolver el caso al foro apelativo intermedio para que realizara un ejercicio de revisión válido, emitió su propio juicio en torno a la determinación del foro administrativo. Resolvió que no le

parece que la determinación de la Policía haya sido especulativa ya que "existe evidencia sustancial de la razonabilidad de la decisión del Superintendente". Opinión, págs. 27-28. Señaló que "[v]arias personas cercanas dejaron saber en sus correspondientes entrevistas la preocupación al respecto. Así como la declaración jurada de su entonces esposa en la cual plasmó las amenazas". Íd., pág. 28. Aunque es acertado que el Tribunal de Apelaciones debió examinar la prueba que el Procurador General le ofreció, no podemos pretender subsanar el error de ese tribunal examinando esa prueba por primera vez en esta instancia apelativa y revisando nosotros al foro administrativo.

III

Para justificar su intervención en los méritos del caso en esta etapa, la mayoría hizo constar en su Opinión que el expediente administrativo fue puesto "a la disposición" del Tribunal de Apelaciones. Opinión, pág. 6, esc. 4 y pág. 26. Sin embargo, poner la prueba "a la disposición" no equivale a hacerla formar parte de los autos. Este Tribunal está limitado a ejercer su función revisora en relación a la prueba que forma parte de los autos del Tribunal de Apelaciones. Véanse, Méndez v. Fundación, 165 DPR 253, 277 (2005); Blás v. Hosp. Guadalupe, 146 DPR 267, 319-320 (1998). El apéndice de un recurso viene a ser realmente el "expediente judicial" en el que descansa el foro revisor para descargar sus responsabilidades y prerrogativas como foro de apelación. H.A. Sánchez Martínez, Derecho Procesal Apelativo, Puerto Rico, Lexis-Nexis, 2001, pág. 314. El

apéndice no deberá contener documento alguno que no hubiese formado parte de los autos originales. Íd., pág. 332. Por eso, la Regla 34(d) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, establece, en lo pertinente, que

> [l]os apéndices **solo** contendrán copias de documentos que formen parte de los autos del Tribunal de Primera Instancia, del Tribunal de Apelaciones, de la agencia administrativa, de la Junta de Subasta o del municipio, según sea el caso. (Énfasis nuestro.)

Al soslayar esta normativa, la mayoría ejerció su facultad revisora en cuanto a la determinación del foro administrativo y no en cuanto al dictamen del foro apelativo intermedio. Es esto último -y no lo primero- lo que le corresponde a este Tribunal como foro de última instancia.

## IV

Por lo anterior, resulta evidente que en este caso el Tribunal de Apelaciones abusó de su discreción al intervenir con el dictamen del foro administrativo sin antes elevar la prueba que faltaba en el expediente. Lo que procedía era que el foro apelativo intermedio ordenara que se elevaran los autos originales de la agencia o le ordenara al Procurador General proveerle la prueba que obra en el expediente confidencial del señor Rolón Martínez, la evaluara en conjunto con el resto de los documentos del expediente y adjudicara el caso en los méritos. Solo luego de eso, y si la parte afectada por el dictamen hubiese recurrido, hubiésemos estado en posición de revisar la controversia en los méritos.

Al resolver todo aquí, nos convertimos en el primer tribunal que revisa los documentos confidenciales que obran en el expediente de la agencia y subvertimos el orden de revisión establecido por ley. Para ello permitimos que se nos presente, por primera vez, prueba que no obra en los autos del Tribunal que hoy revisamos. Eso no es lo correcto. Para efectos prácticos, suplantamos al Tribunal de Apelaciones y no le dejamos hacer su trabajo. Al final, la determinación administrativa la revisamos nosotros por primera vez.

Por eso, coincido en revocar al Tribunal de Apelaciones, pero devolvería el caso a ese foro para que resuelva el recurso en los méritos.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Francisco Rolón Martínez<br><br>Recurrido<br><br><br>v.<br><br>Superintendente de la Policía de Puerto Rico, José L. Caldero López<br><br>Peticionario | CC-2016-0587 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de agosto de 2018.

Se enmienda *Nunc Pro Tunc* mi Opinión Concurrente de 27 de agosto de 2018, a los únicos efectos de hacer constar que el Juez Asociado señor Feliberti Cintrón se unió.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado